## THE PEOPLE *v.* WILLIAM MOODY.

The wanton, malicious and secret destruction of the personal property of another is a misdemeanor at the common law.

The prisoner was indicted for having, in the daytime, maliciously and clandestinely, and in a spirit of wantonness and revenge, cut, mutilated and injured the harness of D. T. The indictment was quashed at the Sessions, on the ground that it did not charge any criminal offense, either at common law or by the statute. On error, the judgment was reversed, the court holding that the offense charged amounted to malicious mischief, and was punishable by the common law as a misdemeanor.

The case of *The People* v. *Kilpatrick* (5 *Denio*, 277), commented on and distinguished.

Form of an indictment for malicious mischief, and of an entry in the record quashing the same.

AN indictment, of which the following is a copy, was found against the prisoner, in the county of Tioga:

"*Tioga county, ss:* The jurors of the People of the State of New York, in and for the body of the county of Tioga aforesaid, to wit, Lorain Curtis, &c., good and lawful men of the said county of Tioga, then and there being duly sworn and charged upon their oaths to inquire for the People of the said State of New York, in and for the body of the county of Tioga aforesaid, upon their oaths aforesaid, present:

"That William Moody, late of the town of Owego, in the county of Tioga aforesaid, on or about the twenty-third day

The People *v.* Moody.

of July, in the year of our Lord one thousand eight hundred and sixty-two, at the town of Owego aforesaid, unlawfully, willfully and maliciously intending to injure one David Taylor, then of the town of Tioga, in said county of Tioga, and disturb the peace of the People of the State of New York, and from a spirit of wantonness and black and diabolical revenge, which he, the said William Moody, then and there held against the said David Taylor, without just cause, did, at the time and place first aforesaid, to wit, on the twenty-third day of July, in the year of our Lord one thousand eight hundred and sixty-two, at the town of Owego aforesaid, feloniously, maliciously and mischievously, and in a secret and clandestine manner, with some sharp instrument which he, the said William Moody, in his right hand then and there held, cut, sever, hack and otherwise disfigure the reins and tugs and other useful appendages of a certain single one-horse harness, of the value of fifteen dollars, the property, goods and chattels of the said David Taylor (and the said William Moody then and there well knowing said harness to be the property, goods and chattels of said David Taylor), thereby damaging, injuring and partly destroying said harness and the tugs and reins and other useful appendages aforesaid belonging to the same, and rendering the same nearly useless, and with the wicked, felonious and malicious intent aforesaid, against the peace of the People of the State of New York and their dignity.

"And the jurors aforesaid, upon their oath aforesaid, do further present, that the said William Moody, late of the town of Owego aforesaid, on or about the twenty-third day of July, in the year of our Lord one thousand eight hundred and sixty-two, at the town of Owego aforesaid, with force and arms, feloniously, maliciously and mischievously, and from a spirit of mere wantonness and revenge, which he, the said William Moody, then and there held against the said David Taylor, and in a secret, sly and clandestine manner, did cut, sever and otherwise disfigure, damage and injure, by the use of some sharp instrument to these jurors unknown, which he, the said William Moody, in his right hand then and there held, a certain

one-horse harness, of the value of fifteen dollars, the property of the said David Taylor, and then and there in his possession, against the peace of the People of the State of New York and their dignity. .

"And the jurors aforesaid, upon their oaths aforesaid, do further present, that the said William Moody, late of the town of Owego aforesaid, on or about the twenty-third day of July, in the year of our Lord one thousand eight hundred and sixty-two, at the town of Owego aforesaid, with force and arms, unlawfully, willfully and maliciously intending to injure one David Taylor, did feloniously, knowingly and maliciously, and in a spirit of mere wantonness and revenge, and without any hope or expectation of gain or advantage, and in a secret and stealthy manner, in the daytime, cut, sever, damage and destroy a certain one-horse harness of the value of fifteen dollars, of the goods and chattels of the said David Taylor, and then and there in his possession, against the peace of the People of the State of New York and their dignity.

"And the jurors aforesaid, upon their oath aforesaid, do further present, that the said William, late of the town of Owego, and county aforesaid, on or about the twenty-third day of July, in the year of our Lord one thousand eight hundred and sixty-two, at the town of Owego aforesaid, with force and arms, did feloniously, maliciously and wantonly, and in a secret and clandestine manner, injure and deface, by the use of some sharp instrument, to these jurors unknown, which he, the said William Moody, in his right hand then and there held, a certain one-horse harness, of the value of fifteen dollars, of the goods and chattels of one David Taylor, and then and there in his possession, and then and there being the product and work of art, and then and there situate on private ground in the town of Owego aforesaid, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity.

"D. O. HANCOCK, *District Attorney.*"

The prisoner was brought before the Court of Sessions of the county of Tioga, and pleaded not guilty.

The following entry was then made on the record:

Afterwards, to wit, at said last mentioned term of the Court of Sessions, and on the 16th day of December, A. D. 1862, the said William Moody, in open court, and with the leave of said court, withdraws his plea of not guilty, and then and there by his counsel, John J. Taylor, moves the said Court of Sessions, composed of the county judge of said county, and the justices of Sessions of said county as aforesaid, to *quash* said indictment and discharge the said William Moody, the prisoner at the bar, on the alleged ground that the said indictment does not set forth or describe any criminal offense, indictable either at common law or by any statute law of the State of New York.

D. O. Hancock, district attorney of said county of Tioga, who prosecutes for the People of the State of New York, in and for the body of the said county of Tioga, then and there opposed said motion of the prisoner's counsel, and objected to the granting thereof, and insisted upon the prisoner's pleading to said indictment, and upon a jury being called to try the same. And upon due argument had, the said Court of Sessions, composed of the county judge of said county, and of the justices of Sessions of said county, as aforesaid, to wit: On the said 16th day of December, A. D. 1862, at the said term of said court, did in open court grant the said motion of the prisoner's counsel, and quash said indictment, and discharge the said William Moody, the prisoner at the bar, and for the alleged reasons aforesaid, to which decision and ruling of said court the said district attorney did then and there, and in due form of law, duly except, which exception was then and there, by the said court, duly noted.

The record was then removed into this court by a writ of error sued out by the district attorney.

*D. O. Hancock* (District Attorney), for the People.

*J. J. Taylor*, for the defendant.

*By the court*, CAMPBELL, P. J.   The prisoner was indicted
at the Tioga County Sessions for malicious mischief; the par-
ticular offense charged was, that he did, in the *daytime*, but
*secretly* and *clandestinely*, and with malice, cut, mutilate and
injure a harness.   The counsel for the prisoner moved to quash
the indictment, on the ground that "it did not set forth or
describe any criminal offense indictable either at common law
or by any statute law of the State of New York."   This motion
was granted by the Court of Sessions.   There is no pretense
for holding that the offense charged falls within the provisions
of any of our statutes.   The only question is, whether this
offense charged — the wanton destruction of personal property
in the daytime, but done secretly, clandestinely and maliciously
—is a crime or misdemeanor at common law, for which an
indictment can be sustained, or whether it is simply a trespass
for which the offender can be punished only in a civil action.
There are express adjudications on this question in our State
and in other States, some of them conflicting and leaving the
law apparently unsettled.   Before alluding to them, I desire
to present some general suggestions for the purpose of casting,
perhaps, some faint light on an interesting controversy.   Much
respect has been paid to the statements of the great comment-
ator on English law, Sir William Blackstone.   His Comment-
aries have been received as authority, and are, as all admit,
entitled to the highest consideration.   In reference to the sub-·
ject under consideration, he says, in book 4, ch. 17, "*Malicious
mischief* or damage is the next species of injury to private
property which the law considers as a *public crime.*   This is
such as is done, not *animo furandi*, or with an intent of gain-
ing by another's loss, which is some, though a weak excuse,
but either out of a spirit of wanton cruelty or black and
diabolical revenge, in which it bears a near relation to the
crime of arson, for, as that affects the habitation, so this does
the other property of individuals.   And, therefore, any damage
arising from this mischievous disposition, *though only a trespass
at common law*, is now, by a multitude of statutes, made penal
in the highest degree.   Of these I shall extract the contents in

The People *v.* Moody.

order of time. And first, by statute, 22 Henry VIII, ch. 11, perversely and maliciously to cut down or destroy the pow-dike in the fens of Norfolk and Ely is felony." Several other statutes are referred to in successive reigns after Henry VIII, in which the offense is declared to be felony without the benefit of clergy. Our interest now is in reference to the period of time when, according to Blackstone, malicious mischief was first, by statute, declared a crime in England. The 22 Henry VIII, would be about 1531. The offense is one which the commentator says " the law considers· as a '*public crime.*'" It bears a near relation to arson, which, especially house burning, was a crime at common law. It is an offense committed " out of a spirit of wanton cruelty or black and diabolical revenge." It is an offense toward which our English ancestors were specially sensitive, as evidenced by the multitude of statutes enacted for the purpose of punishing the offender with a severity which seems to us not called for by the nature of the crime. Is it credible that there was in England, prior to 1531, no such statute regulating the punishment of such offenses, and that no indictment could be maintained at common law? It was about 1071, or in the fourth year of Willliam of Normandy, that he solemnly swore that he would observe the ancient and approved laws of England, particularly those of Edward the Confessor; and subsequently those laws, together with such alterations as the Conqueror made, were ordained and declared, in a general council during his reign, to be the laws of the land,. and in all things to be observed. The laws digested and collected by Edward the Confessor were, it is said, principally those of Alfred, and thus combining the ancient unwritten laws and customs of the Britons, the Picts and Danes, with the written and unwritten laws and customs of Saxons, and Romans, and Normans, the foundations of British law were laid, and the great fountain of the English common. law was unsealed. From the 4th of William I, to 22 Henry VIII, a period of nearly five centuries, during all which time the common law bore sway, it is, as remarked, hardly credible that there was no criminal punish-

ment of the crime of malicious mischief. May we not rather conclude with HUTCHINSON, Justice, as quoted and approved in *Loomis* v. *Edgerton* (19 *Wend. R.*, 420), that "the statutes were so ancient, and the punishment so severe, that they were, of course, resorted to, and the common law thus lost sight of, though the statutes were intended as a mere increase of its penalties?"

In Pennsylvania and Massachusetts indictments for malicious mischief have been frequently maintained, though there were no State statutes declaring the offense criminal.

In *Republic* v. *Feischer* (1 *Dallas R.*, 335), the indictment was for "*maliciously, willfully and wickedly killing* a horse." The attorney-general observed that "he had not been able to discover any instance of an indictment at common law for killing an animal, or indeed for any species of malicious mischief, yet that the reason of this was probably the early interference of the statute law to punish offenses of such enormity, for that in all precedents, as well ancient as modern, he had found the charge laid '*contra formam statuti.*'" He further said, "the law proceeded upon principle, and not merely upon precedents." The indictment was sustained, and, as the attorney-general had claimed, upon principle, the chief justice, in pronouncing the judgment, saying, "that whatever amounts to a *public wrong*, may be made the subject of an indictment."

In case of *Commonwealth* v. *Leach and others* (1 *Mass. R.*, 58), the indictment was for *poisoning a cow*. The indictment was at common law. No doubt was expressed but that the indictment would lie at common law. The question considered was, whether the Court of Sessions had jurisdiction. In that case, SEDGWICK, Justice, said: "It appears to me, generally speaking, that the *English statutes*, which were in force at the time of the emigration of our ancestors from that country, are common law here." DANA, Chief Justice, said: "The term '*common law,*' ought not be construed so strictly as is contended for by the counsel for the defendant. Generally, when an English statute has been made in amendment of the common law of England, it is here to be considered as

part of our common law." In *Commonwealth* v. *Wing* (9 *Pick. R.*, 3), Chief Justice PARKER, quoting approvingly Chief Justice SEWALL, in *Cole* v. *Fisher* (11 *Mass. R.*), says, in relation to the unnecessary discharge of guns, that " when the act is accompanied with purposes of wanton or deliberate mischief the guilty party is liable, not only in a civil action, but as an offender against the public peace and security, and is liable to be indicted."

In *The People* v. *Smith* (9 *Cow. R.*, 258), an indictment for maliciously killing a cow was sustained, the court saying that the offense was distinguishable from an ordinary trespass in this, " *that it is not only a violation of private right, without color or pretense, but without the hope or expectation of gain.*"

This, it seems to me, is a concise and correct statement of the true doctrine.

We come now to the case of *Loomis* v. *Edgerton* (19 *Wend. R.*, 419), where the precise question raised in this case arose and was determined, the court holding that maliciously and secretly breaking in pieces a cutter was a criminal offense. Justice COWAN, after reviewing the authorities and approving of the decision in *People* v. *Smith* (*supra*), says the balance of authority was in favor of holding the offense to be criminal. Were it otherwise, in his expressive language, " it would be a sad exception to the general wisdom of the common law."

The case of *The People* v. *Kilpatrick* (5 *Denio R.*, 277), and upon the authority of which we were told on the argument, the indictment in this case was quashed, I do not think is necessarily in conflict with *People* v. *Smith*, or *Loomis* v. *Edgerton*. The indictment in *Kilpatrick's Case* charged him with maliciously breaking in pieces two windows in a dwelling house. Doubt was expressed in that case whether, if the charge had been that the offense was *secretly* done, the indictment could not have been maintained. But larceny could not be predicated on the carrying away of property where the offender was first obliged to detach it from the freehold. Injury to the freehold was but trespass. Though the distinction may not be well taken, yet, such seems always to have been the law,

except as changed by statute. I cannot agree that the indictments for killing domestic animals have been sustained upon features peculiar to such offenses, and as alone evincing a cruel and depraved mind, and that such cases are exceptional. Our legislature, it is true, has marked its abhorrence of such offenses by enacting that he who shall willfully administer poison to any cattle, horses or sheep, or shall expose poisonous substances with the intent that the same may be taken, may, on conviction, be punished by imprisonment in the State prison. (3 *R. S.*, 5*th ed.*, 969, § 16.) The offense which, by the common law, was a misdemeanor, may now be punished as a felony. Our statute, like the English statutes, has raised the grade of the offense. But equal depravity and wickedness may exist, and be the cause of malicious mischief, where there is no killing or maiming of domestic animals. The earliest English statute was directed against the villain who would break down the dikes and let in the wasting flood to sweep away the habitations and destroy the fields of the farmer. We have already seen that BLACKSTONE classes *malicious mischief* with the public crimes of England. As a public crime, as an offense tending to disturb the public peace, it is indictable. It would be a strange anomaly, indeed, if a prowling villain could enter on another's premises clandestinely and then secretly burn, waste and destroy any large amount of valuable personal property, and go unwhipt of justice, when, if he had carried away the value of twenty-five dollars, he would have been a subject for the State prison for a term of years. In my judgment we ought to follow the ruling in *Loomis* v. *Edgerton*, and hold that the wanton, malicious and secret destruction of personal property is a misdemeanor at the common law, and, therefore, indictable and punishable criminally. If my brethren agree with me, the order quashing this indictment should be reversed, and the prisoner should be required to appear and plead to the indictment.

Ordered accordingly.